[No. 7,642.—Department Two.]

## CAROLINE GREINER *v.* JACOB GREINER ET AL.

HUSBAND AND WIFE—COMMON PROPERTY—CONVEYANCE IN FRAUD OF WIFE —INVOLUNTARY TRUSTEE—SUBROGATION.—G., the husband of the plaintiff—pending a suit for divorce brought by him (which was afterwards dismissed)—made an assignment of certain notes and mortgages, without

| 58 | 115 |
| 80 | 49 |

| 58 | 115 |
| d103 | 183 |

| 58 | 115 |
| 106 | 362 |

consideration and upon a secret trust, in favor of himself, with intent to defraud the plaintiff of her right in them. Prior to the assignment the notes and mortgages were redeemed by G. from a pledge-holder—in whose hands they were—with money of the plaintiff which he had in his possession.

*Held*: By using the property of the plaintiff to redeem the notes and mortgages, G. became a trustee for his wife, and she was entitled to be subrogated to the lien of the pledgee.

ID.—ID.—ID.—A wife can not maintain an action while the marriage bond exists, to set aside a transfer of the common property, made by the husband for the purpose of defrauding her. (MORRISON, C. J., and MYRICK, J., dissenting.)

ID.—ID.—ID.—ACTION QUIA TIMET.—Probably an action would be maintainable by the wife, while the coverture exists, of the character of a bill *quia timet*, to procure an injunction to restrain the husband from carrying out a threatened fraudulent transfer of such property which would result in loss to her, or to compel the fraudulent donee or grantee, with notice of the fraudulent intent, to give security to satisfy any claim which she may be found to have to it on the settlement of the affairs of the community, when the marriage tie has been dissolved.

APPEAL from a judgment for the defendant, in the Superior Court, Yolo County. BUSH, J.

*J. W. Armstrong*, for Appellant.

*W. B. Treadwell* and *C. P. Sprague*, for certain Respondents.

*J. S. Reamey*, for Respondent Greiner.

THORNTON, J.:

In this action the material averments of the complaint were all denied by the answers of the defendants, except Jacob Greiner, and some affirmative averments were made in these answers respectively, necessary to show a complete defense on the part of the defendant answering. Jacob Greiner admitted all the averments of the complaint to be true.

The cause came on for trial, when the plaintiff, as is shown by a bill of exceptions, called defendant Jacob Greiner as a witness, and he was asked by the attorney for plaintiff this question: "Are you the husband of the plaintiff?"

The attorneys for the defendants objected to the question, and also objected to any evidence in support of the complaint, on the ground that the complaint did not state facts sufficient to constitute a cause of action.

The Court sustained the objection, and refused to admit any evidence in support of the allegations of the complaint. To this an exception was regularly made on behalf of the plaintiff.

It does not appear that the plaintiff at any time asked leave to amend the complaint or desired to amend it. No point, however, is made as to this.

It is averred in the complaint that the plaintiff Caroline Greiner, and the defendant Jacob Greiner, are husband and wife, and residents of this State since about the 1st day of November, 1869; that during their coverture they have acquired a large amount of common property, much of which consisted of money; that during the period of coverture mentioned, defendant Jacob Greiner, lent and disposed of a portion of said money and property to different persons, and took as security therefor certain notes and mortgages, which are fully set forth. One loan so secured was of two thousand four hundred dollars, another of one thousand eight hundred dollars, and still another of five hundred and eighty dollars; these notes were each executed to Jacob Greiner, and bear date as follows : the first mentioned, 25th of July, 1877, the second, 25th of September, 1876, the third, 20th of November, 1877; that on or about the 13th day of November, 1879, Jacob Greiner, the defendant above named, commenced an action in the District Court for the County of Yolo, against the plaintiff for a divorce from the bonds of matrimony, the custody of the children, the issue of their marriage, and the division of their common property; that in his complaint he made no mention of the notes and mortgages above mentioned, and he omitted them with intent to cheat and defraud the plaintiff thereof, and in furtherance of said fraudulent design, on or about the 21st day of February, 1879, he, with intent to cheat and defraud plaintiff of her right in these notes and mortgages, and to prevent plaintiff from obtaining any part thereof, transferred them without any consideration to the defendants Adam and Christiana Umbewust, who had full notice of said intent ; that at the time of the transfer, it was agreed between defendant Greiner and the defendants Umbewust, that the Umbewusts were to claim these notes and mortgages as a gift to defendant Chris-

tiana Umbewust, but that they were, in truth and in fact, to
hold them in secret trust for Jacob Greiner, to prevent the
plaintiff from obtaining them, and for the same purpose they
were to collect the amounts secured by the notes and mort-
gages, and pay the same over to Jacob Griener; that at the
time the said action for divorce was commenced, the mort-
gages and notes had been pledged to the Bank of Woodland,
as security for the payment of one thousand dollars and in-
terest thereon, then owing by Jacob Greiner to the bank, and
the notes and mortgages were then held by the bank as such
security, and while said action was pending Jacob Greiner,
having in his possession one thousand one hundred dollars,
which was then the separate property of the plaintiff, derived
from the sale of wheat which was her separate property, on
or about the 21st of February, 1879, took and used said
money to redeem the notes and mortgages from the bank,
that being the amount then due said bank; that thereby
Jacob Greiner got possession of the notes and mortgages, and
transferred them to the defendants Umbewust, with the fraud-
ulent intent aforesaid, all of which was known to the Umbe-
wusts; that on or about the 1st day of April, 1879, the
Umbewusts transferred to the defendant Selig Hyman without
any consideration, one of the notes and mortgages executed to
Jacob Greiner; that this transfer was made with intent to cheat
and defraud the plaintiff thereof, and that Hyman took this
note and mortgage, with notice of this fraudulent intent, that
the value of said note and mortgage is the principal and ac-
crued interest thereon; that on or about the — day of April,
1879, the Umbewusts transferred to the defendant, the Bank
of Woodland, the other notes and mortgages, as security for
the payment of a large sum of money, of which there now
remains due and owing to the bank about one hundred and
sixty-five dollars; that the bank took these notes and mort-
gages without notice of any fraud, and that it has a lien on
them for said balance; that said bank held and now holds
these securities; that the Umbewusts before this action was
commenced threatened and still do threaten and intend to dis-
pose of the securities subject to said lien, with intent to cheat
and defraud plaintiff; that said securities are of the value of
the principal and interest due thereon, according to the face

thereof; that the Umbewusts are insolvent and without suf-
ficient property to satisfy the damages which plaintiff will
sustain if she fails to get possession of said securities and the
proceeds thereof on recovering judgment therefor; that there
were born to the plaintiff and Jacob Greiner, two children of
said marriage, both boys, who are minors, and are now living;
that plaintiff and Jacob Greiner became reconciled to each
other, and the action for divorce was prior to the commence-
ment of this action dismissed.

The allegations in regard to the action for a divorce above
mentioned, brought by defendant, Jacob Greiner, against his
wife, the plaintiff, are, in our opinion, immaterial and irrel-
evant in any aspect of the case, and may be laid out of view.
The other allegations in the complaint are as potent and effect-
ual without them as with them.

Prior to the adoption of the codes the title to the common
property vested in the husband.   He could during the cover-
ture dispose of such property absolutely, as if it were his own
separate property.   The interest of the wife during the same
period was a mere expectancy, like the interest which an heir
may possess in the property of his ancestor.   (*Van Maren* v.
*Johnson,* 15 Cal. 312; *De Godey* v. *Godey,* 39 id. 164.)   It is
true that the husband could not deprive her of it by his will.
(*Beard* v. *Knox,* 5 Cal. 256.)   The same is true under the
Civil Code.   By § 172 of that code it is provided that " the
husband has the management and control of the community
property, with the like absolute power of disposition (other
than testamentary) as he has of his separate property."   Such
property is not liable for the debts of the wife, made after
marriage, unless secured by a pledge or mortgage thereof ex-
ecuted by the husband.   (Civ. Code, § 167.)

With such absolute power over the common property, as is
given by the section above cited, it would be difficult to affirm
that any fraud had been committed in regard to it by Jacob
Greiner under the circumstances detailed in the complaint.
If he has retained any interest in the property transferred,
that interest still remains common property, and the wife re-
tains her interest in it as before.   If the transfer has been
made to defraud the community, on the dissolution of the
marriage, the wife can bring her action to vacate it.   We do

not see that she can bring any action to set aside any transfer made by the husband, while the marriage bond exists. Until this is dissolved, according to the rule as laid down in *Van Maren* v. *Johnson*, above cited, she has no interest in the common property which entitles her to sue. As this is so, the lapse of time will be no bar to such action brought by her on the dissolution of the community. *Non constat*, that on the happening of the event just referred to, the community property will not be ample to give her all that she will be entitled to. It is nowhere averred in the complaint that Jacob Greiner is insolvent, or that the portion of the common property alleged to be transferred is not an inconsiderable portion of the common property actually in hand. If the portion so transferred is inconsiderable when compared with the whole amount of the common property, certainly the wife is not injured by such transfer under any circumstances.

The cases cited on behalf of appellant are not in conflict with the above. In each case the marriage bond had ceased to exist either by death or on decree of divorce. In *Smith* v. *Smith*, 12 Cal. 226, which was an action brought by the wife for a divorce and a division of the common property, a decree of divorce had been granted, and what was held in that cause was with reference to a case where the marriage tie had been dissolved. In *Peck* v. *Brumagim*, 31 id. 441, the property in controversy had been given by the husband to the wife during the coverture, and on the death of the husband, his administrator sought, by a proceeding in the Probate Court, to subject it by a sale under the order of that Court to the payment of the debts of the donor. The surviving wife brought the action to enjoin the sale. The Supreme Court held that she was entitled to the injunction. In *De Godey* v. *Godey*, 39 id. 164, a decree of divorce had been rendered in a different action. In *Lord* v. *Hough*, 44 id. 581, the husband had brought an action for a divorce, which was pending when he died, and after his death the action in the case cited was commenced. In *Broad* v. *Murray*, 43 id. 229, as in *Broad* v. *Broad*, 40 id. 493, the action was commenced by the children long after the death of the wife, who was their mother. The same is true of *Cook* v. *Norman*, 50 id. 633.

The case of *Galland* v. *Galland*, 38 id. 265, is also cited.

There is nothing in this case bearing on the point under consideration. In it, the sole question on which the case turned, and which came before this Court on demurrer to the complaint, is that stated by Crockett, J., who delivered the opinion: " The question presented on this appeal is whether or not a wife, who, without cause or provocation, is driven from her husband's house with her infant child, and is wholly without the means of support, can maintain an action against the husband for a reasonable allowance, for the maintenance of herself and child, unless she couples with the application a prayer for divorce ?"

It may be that the interest of the wife is sufficient while the coverture exists on a complaint properly framed of the character of a bill *quia timet* to procure an injunction to restrain the husband from carrying out a threatened fraudulent transfer of such property which would result in loss to her, or to compel the fraudulent donee or grantee of such property with notice of the fraudulent intent to give security to satisfy any claim which she may be found to have to it on the settlement of the affairs of the community when the marriage tie has been dissolved. Probably such an action would be maintainable by the wife. (*Nance* v. *Coxe*, 16 Ala. 129; *Lyde* v. *Taylor*, 17 id. 275.) But it is unnecessary to decide this question in this case. We are satisfied that she can maintain no such action in regard to the common property as attempted herein.

But it is contended by appellant that she is entitled to recover against the defendants Umbewust by reason of the one thousand one hundred dollars which was her separate property, which Jacob Greiner had in his possession, and which he took and used to redeem the notes and mortgages from the Bank of Woodland, who held them as security, which notes and mortgages were after they were so redeemed transferred with intent to cheat and defraud her, all of which was known to the Umbewusts.

It is said that " one who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." This is so provided by § 2223 of the Civil Code. But does it appear from the above allegations that this money was wrong-

fully detained, so as to convert the husband of the plaintiff or the donee of the husband into a trustee for her ?

The averments in relation to this sum of one thousand one hundred dollars, do not show any agreement of the plaintiff and the husband which allowed him to use her money for his own purposes. The statute does not make him the agent of the wife by virtue of his relation to her as husband, nor can any agency be implied from it, except to keep and pay over on demand. There is an entire absence of allegation as to any agreement authorizing him to use her money for his purposes. The averments show a mere bailment, by which Jacob Greiner became the custodian or depositary of the money with the obligation raised by the law to pay it over to the plaintiff on demand. (Civ. Code, 1815, 1824.) He used it for his own purposes, and thus converted it. (Redf. Bailm. § 630.) Such conversion relieved her of any obligation to make a demand. Within the rule prescribed by § 2223 of the Civil Code, Jacob Greiner, under the circumstances set forth in the complaint, became a trustee.

It is provided by § 2224 of the Civil Code, that one who gains a thing by *fraud,* the violation of a trust *or other wrongful act,* is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.

If Jacob Greiner had purchased the notes and mortgages held by the Bank of Woodland, with the one thousand one hundred dollars above mentioned, the plaintiff had an election to have them as her own property against him, or his donees. (Whart. Com. on Agency, § 201, 232, 412, 730, 763, and cases cited in notes; *Wells* v. *Robinson,* 13 Cal. 140.) But he did not purchase them. He relieved them of a lien upon them, held by the bank. They were originally owned by Jacob Greiner, who had pledged them as security for money lent him by the bank, and the plaintiff's money relieved them from this lien. The plaintiff's money, wrongfully used by her husband, relieved them of this lien. His wrongful use of this money made him a trustee of whatever was acquired for her benefit. The money so used entitled her to be subrogated to the lien of the bank on these notes and mortgages to the extent of the money paid as against Jacob

Greiner. The title of the defendants Umbewust, who are the donees of the husband, is no better than his. (Civ. Code, § 2224.) The plaintiff is therefore entitled to be subrogated to the lien of the bank against the defendants Umbewust.

And as the defendant Selig Hyman is averred in the complaint to be the donee by a transfer from the Umbewusts of the note and mortgage executed by Wilhelm Brandes, the plaintiff is entitled to a like decree against him as against the Umbewusts, as to the note and mortgage executed by Brandes.

As to the other notes and mortgages, it is averred that the Bank of Woodland holds them as innocent purchasers to secure a balance due that bank by a transfer from the Umbewusts. The plaintiff is entitled to a decree that the bank hold the two notes and mortgages for her benefit to the extent above indicated, after the balance due it has been satisfied.

It is not necessary to indicate more particularly the relief to which the plaintiff may be entitled, nor is it intended to be held that this is all the relief to which she is entitled. But enough has been said to show that in our judgment the complaint does state facts sufficient to constitute a cause of action, and therefore we conclude that there is error in the ruling of the Court below, for which the judgment should be reversed and the cause remanded, and it is so ordered.

SHARPSTEIN, J., concurred.

MORRISON, C. J., concurred in the judgment of reversal, but did not concur in the views expressed by Mr. Justice Thornton respecting the right of the husband to dispose of the community property by gift. (See 1 Pom. Eq. Jur., § 503; *Lord* v. *Hough,* 43 Cal. 581.)

MYRICK, J.:

I concur in the judgment upon the ground that the Court erred in sustaining the objection to the testimony offered, and upon the ground that plaintiff is entitled to relief by reason of her separate property being used as alleged. From the other views expressed in the foregoing opinion I dissent. I do not think that a husband has the right to give away common property to the injury of or in fraud of the wife, nor do

I think that she must wait until the community is dissolved before attempting to redress the wrong. His right to manage and dispose of the community property must be exercised in endeavors to preserve or use it for their common benefit, not to give it away.