[No. 18255. Department Two.—September 21, 1894.]

JAMES FAULKNER, Respondent, v. ANTONIO
RONDONI et al., Appellants.

Findings—Admissions of Pleading.—A finding is not necessary upon a
fact admitted by the pleadings, but if the court finds thereon against
the admission it is, if material, ground for reversal.

Id.—Appropriation of Water—Public Lands.—An appropriator of the
waters of a natural stream, flowing through the public lands of the
United States, prior to the divestment of the government title, and who
has continued to use such waters pursuant to such appropriation for a
useful purpose, acquires a right thereto superior to that of a subsequent
riparian owner claiming under the government.

Id.—Prescription—Adverse Use of Water.—In order to acquire a pre-
scriptive right to the use of the waters of a natural stream, as against a
prior appropriator, there must have been such an invasion of the rights
of the appropriator that he would have had ground of action against the
intruder; and, so long as the appropriator receives the quantity of water
to which he is entitled. the use of the surplus waters by another is not
an invasion of his rights.

Id.—Use of Water on Fork of Stream.—The use by a riparian proprie-
tor of all the waters of one fork of a stream is not an invasion of the
rights of a prior appropriator, who takes water from the main stream
below its forks, and who at all times has received all the water to which
he is entitled under his appropriation.

Id.—Impeachment of Witness—Collateral Matters.—In an action by
such appropriator to determine his water right as against such riparian
proprietor, a witness for the plaintiff cannot be impeached by showing
contradictory statements made by him, in the absence of the plaintiff,
as to the rights of the defendant in the waters of the fork of the stream.

Appeal from a judgment of the Superior Court of
Nevada County, and from an order refusing a new trial.

The facts are stated in the opinion.

*A. J. Ridge*, and *A. Burrows*, for Appellants.

*Charles W. Kitts*, for Respondent.

Searls, C.—This is an action to quiet title to a cer-
tain ditch and water right; to recover damages for the
diversion of water therefrom, and for an injunction
restraining defendants from such diversion.

Plaintiff had a decree establishing his title to the
ditch extending from his ranch, therein described, to a

certain stream known as South Wolf creek, and his prior right at all times to divert from said South Wolf creek, and to conduct the same through said ditch, water to the extent of thirty-one (31) inches, measured under a six-inch pressure; that the rights of defendants in and to the waters of said stream and its tributaries are inferior and subordinate to those of plaintiff; enjoining the defendants from interfering with said water to the extent of plaintiff's right, and awarding damages against defendants for one hundred dollars, together with costs of suit, and further decreeing defendants to be entitled to use for the purposes of irrigation upon the Paro and Rondoni ranches so much of the waters of said South Wolf creek and its branches as remains in excess of the amount decreed to plaintiff.

The cause was tried by the court without a jury and written findings filed.

Defendants appeal from the judgment, and from an order denying their motion for a new trial.

It was admitted at the trial that plaintiff and his grantors have been the owners of, and in the possession of, that certain land or ranch described in the complaint since 1865, and that plaintiff has been such owner, and so in possession, since 1877.

In 1867 Nathan Wheeler the predecessor in interest of plaintiff, constructed a ditch and flume extending from said ranch to Wolf creek (sometimes called Dry creek), tapping said creek about four hundred feet below the forks thereof, by means of which he diverted the waters of said creek and conducted the same to said ranch, where they were used for irrigation and domestic purposes, and he and his successors in interest, including the plaintiff, have ever since used said water for said purposes.

Wolf creek and its tributaries are natural water-courses, and during a portion of the year afford a large volume of water, but during certain seasons of the year, and especially in the months of July, August, and September, the water in said creek becomes scarce, and at

times there are not thirty-one inches of water in said creek at the head of plaintiff's ditch.

Originally no dam was necessary to divert the water into plaintiff's ditch, but with the lapse of time the channel of the creek, from natural causes or from mining or other causes, has been cut down and lowered so that a dam is now necessary to divert the water.

Defendants are the owners as tenants in common of the ranch described in their joint answer, situate upon said Wolf creek, at and near the head of plaintiff's ditch, the title to which comes to them from the Central Pacific Railroad Company, through a deed executed by said company to Alexander Paro, September 2, 1873; said ranch is designated as the " Paro ranch."

The defendant, Antonio Rondoni, is the owner of a ranch situated upon the forks of Wolf creek, above the Paro ranch, the title to which he derives by sundry mesne conveyances from said Central Pacific Railroad Company, under a deed dated April 8, 1871.

Both the Paro ranch and the Rondoni ranch are under cultivation, and defendants have facilities for diverting, and have been accustomed to divert, water from the forks of said Wolf creek to irrigate their growing crops on their said ranches.

The evidence shows that on the seventh day of September, 1872, Alexander Paro, the predecessor of defendants in the Paro ranch, conveyed to Nathan Wheeler, under whom plaintiff claims, by deed of bargain and sale, the water ditch with the water rights and water thereunto belonging and therewith connected, together with the right to keep said ditch in repair, and to enter upon the lands of the grantor for that purpose.

As before stated, the ditch of plaintiff had its head upon and in part crossed the Paro ranch. Whether or not there had been any controversy as to the right to the water or to the right of way for the ditch prior to the conveyance does not appear.

Defendants in their answer set out a prescriptive right in themselves to the use of all the water of both

forks of South Wolf creek, upon the Paro ranch, and defendant Rondoni pleads a like right to the waters of the south fork or east fork of said creek, for use upon the Rondoni ranch situate on said fork.

The case so far as the facts are concerned must turn 1. Upon priority of appropriation; 2. Upon the prescriptive rights, if any, of the several parties.

Near the close of appellant's brief it is urged that "The entire judgment disregards the riparian rights of the defendants."

There were good reasons for so doing.

The complaint, after stating the date of the appropriation by plaintiff's predecessor, avers "that at the time of the construction of said ditch and the appropriation of said water, the land over which said ditch ran, and over which said South Wolf creek, or Dry creek, ran, were open, unsurveyed, unappropriated, government lands of the United States.

The answers failed to deny this allegation, and the court found in consonance with it.

It was not necessary to find upon a fact admitted by the pleadings, but had the court found against the admission it would, if material, have been ground for reversal.

The evidence showed the lands of defendants to be riparian to South Wolf creek or its tributaries, but if they have any riparian rights to the water of said creek they are subordinate, and subject, to the rights of appropriators who diverted such water prior to the divestment of the government title, and who have continued to use such water pursuant to such appropriation for a useful purpose.

We do not know judicially that the land in question is within the limits of a railroad grant, or that if within such limits it is land which the railroad company could take under the grant, or in the absence of proof that such railroad company ever had any title thereto.

The court found in favor of plaintiff as a prior appropriator, and upon his claim of a prescriptive right to

thirty-one inches of water, and against the prescriptive rights of defendants as against plaintiff set up in their answers.

The evidence was, it is thought, amply sufficient to support these findings.

There is in the very nature of the claims set up to the use of water, in cases of this character, certain elements of uncertainty which cannot be eliminated.

Mountain streams which furnish large quantities of water during a portion of the year, and which is appropriated by many persons, during the dry season or in years of drouth, dwindle to mere rills or cease to flow.

Witnesses who have observed the annual user of the water by given individuals for many years are prone to forget as to the nonuser when the quantity is small, from the simple fact that the use impresses the mind, while its absence is not noticed by the casual observer.

These, and some other, elements of uncertainty which might be mentioned render the task of determining the exact facts in a given case extremely difficult. A careful review of the evidence and admitted facts in the present case leads to the conclusion that upon all the salient points the court below deduced the facts from the testimony with a large degree of accuracy.

Appellants contend that the finding that plaintiff's ditch would carry thirty-one inches of water is unsupported by the evidence.

In support of this contention we are referred to the testimony of C. E. Uren, a civil engineer, who testified in substance that a short distance below the measuring-box there was an old flume, which had a capacity of only thirteen and one-half to fifteen inches under a six-inch pressure. He stated that the capacity of the ditch above the flume was thirty-five inches.

The witness speaks of the grade of the flume, but the record is silent as to what that grade was, thus omitting an important factor essential to a calculation of the capacity of the ditch.

On the other hand, plaintiff and Alcorn, a witness on

his behalf, testified that the ditch would carry thirty-one inches and that the flume would carry as much as the ditch.

There was also evidence, 1. That plaintiff used a portion of the water to irrigate above this flume; 2. That at the time when Uren probably measured the flume it was split and not in repair and that another board was put on to raise it two inches higher.

Alcorn, who was entirely familiar with the ditch and had charge of it for a time, says he measured the flume and "it was eight inches bottom and six inches sides." That this was the size of the flume when in its normal condition, and that a portion of the side was removed from some cause when Uren measured it, may well be inferred from the evidence.

The objection that there was no evidence to show that the plaintiff or his grantors have continuously from 1867 to 1891 diverted into their ditch so much of the water as the same would carry, etc., cannot be maintained.

The statement specifies that there was evidence to show that since 1866–67 Wheeler and his successors in interest, including the plaintiff, have each year used the water through the ditch for irrigation and domestic purposes upon plaintiff's ranch.

Several of the witnesses alluded to the water being scarce at plaintiff's dam by saying there was not enough to fill his ditch, and plaintiff, as a witness in his own behalf, said in substance that he had sufficient water to irrigate his ranch until 1891, and that it required his ditch full to irrigate his crop.

If these assertions of the witness were correct, it must follow that his ditch was accustomed to carry water to the extent of its capacity when it was to be had. No point was made on this question at the trial, hence we need not expect to find the evidence full on that head.

Men usually construct ditches of this character with a view to the quantity of water needed or to be had, and

CIV. CAL.—10

not for amusement, and when constructed and used, while the quantity of water actually diverted is a question of fact, the user of the quantity their ditches will carry is so natural and so nearly in accord with our common knowledge that slight testimony is sufficient to establish the fact.

Passing a number of objections to the findings which are merely technical and unimportant, or as in case of one of them directly in the face of the facts as stipulated in open court, and we come to the question most elaborately discussed by appellants in their brief, viz:

That relating to the findings of the court against the prescriptive rights of defendants, claimed to have been acquired by them by an adverse user of the water, for a period in excess of five years.

The right which is acquired in and to the waters of a stream by a prior appropriation thereof may be lost, either wholly or in part, by the adverse possession and user of another.

And when such adverse claimant has had the continued, notorious, uninterrupted, and adverse enjoyment of the water, or of a portion thereof, during the period prescribed by the statute of limitations for entry upon lands (which in this state is five years), the law will presume a grant of the right so held and enjoyed by him. (*Union Water Co.* v. *Crary*, 25 Cal. 504; 85 Am. Dec. 145; *American Co.* v. *Bradford*, 27 Cal. 361; *Cave* v. *Crafts*, 53 Cal. 135; *Cox* v. *Clough*, 70 Cal. 345.)

The right acquired by prescription is measured by the extent of the continuous enjoyment. The right claimed must be adverse; that is to say, " It must have been asserted under claim of title, with the knowledge and acquiescence of the person having the prior right, and must have been uninterrupted." (*Alta Land Co.* v. *Hancock*, 85 Cal. 219; 20 Am. St. Rep. 217; *American Co.* v. *Bradford*, 27 Cal. 361.)

" In order to constitute a right by prescription, there must have been such an invasion of the rights of the party against whom it is claimed, that he would have

had ground of action against the intruder.". (*Alta Land Co.* v. *Hancock*, 85 Cal 219; 20 Am. St. Rep. 217; *Anaheim W. Co.* v. *Semi-Tropic W. Co.*, 64 Cal. 185.)

The glaring defect in appellants' case, under which they claim a prescriptive right, is involved in the proposition last quoted.

Their argument is ingenious, if not sound. It may be paraphrased thus: Defendants, for over ten years, have irrigated their ranch held by them as tenants in common, during each year, with water from the two forks of South Wolf creek. Defendant Rondoni has continuously for ten years irrigated the ranch owned by him on the south fork of said stream, and when necessary so to do has used all the water of said south or east fork for that purpose, and as to the last assertion there is no conflict in the evidence. This must be admitted as literally true, but the conclusion drawn by appellants does not follow.

The testimony shows that plaintiff's ditch has its head below the junction of the two forks of the stream; that during a portion of the year there is sufficient water in the stream for all the parties; that the north fork is the principal or larger branch, and furnishes most of the water; that prior to 1891 plaintiff had plenty of water, or when it became short defendants, upon being notified, turned it down.

It came, no doubt, mainly from the north fork, but this could make no difference to the plaintiff. It was thirty-one inches of water to which he was entitled, and he was not injured, and could not complain that it came from one branch and not from the other.

There was no invasion of his rights, and he had no ground for action so long as he received the quantity of water to which he was entitled; and, according to his testimony, he did receive it until 1891.

It follows that if, under such circumstances, Rondoni used all the water of the south fork, it was not, up to 1891, an invasion of the rights of plaintiff, and hence

afforded no foundation upon which to build a prescriptive right.

At the trial, counsel for appellants, upon the cross-examination of B. Alcorn, a witness who has testified for plaintiff, asked said witness if he had not stated to defendant Rondoni, and Antone Mirandi, at the house of Wheeler during the summer of 1890, when the latter was sick, that he, the witness, knew all about the water, and could tell them as well as anybody else, and that Faulkner (the plaintiff) had the right to the water that came below the forks of the creek, but had no right to the water above the forks of the creek, and that Faulkner had no right to interfere with them as to the water above the forks of the creek?

The witness in answer denied that had so stated. Defendants thereafter called as a witness in their behalf defendant Rondoni, and offered to prove by him the truth of the alleged statement of Alcorn, as involved in the affirmative of the question put to him, to which counsel for the plaintiff objected, as being immaterial, irrelevant, and incompetent, and not pertinent to any issue raised by the pleadings, etc.

The objection was sustained, an exception reserved, and the ruling is now assigned as error.

Antonio Mirandi was also called as a witness; a like offer of proof made; like objections offered; a like ruling had, and exception taken, and a like error is assigned.

It was said by Wallace, C. J., in *People* v. *Devine*, 44 Cal. 458: "A recognized rule, or rather qualification of the rule, governing the impeachment of the credit of a witness by proof of contradictory statements elsewhere made by him, is that the matter involved in the supposed contradiction must not itself be merely collateral in its character, but must be relevant to the issue being tried." (*People* v. *Webb*, 70 Cal. 120; *People* v. *Devine*, 44 Cal. 452; *People* v. *Dye*, 75 Cal. 112; *People* v. *Furtado*, 57 Cal. 346.) *Furst* v. *Second Avenue R. R. Co.*, 72

N. Y. 542, was an action against a street-car company for injury to a child by being run over.

The conductor was called as a witness for defendant, but testified nothing as to the driver. On cross-examination he was asked, in substance, if he had not said to the father of plaintiff that it was the fault of the driver; that had he looked, it would not have happened etc.; replying in the negative, testimony was admitted to contradict him, and it was held error.

In the present case the witness, Alcorn, had not testified as to any matter relating to the right to the water above the forks of South Wolf creek. His declaration out of court, made to third parties and not in the presence of plaintiff, could not bind the latter, and was totally inadmissible for that purpose.

It was not in contradiction of any thing to which he had testified; was outside of legitimate cross-examination, and hence, as it did not come within any exception provided in such cases, the answer of the witness was final. (1 Greenleaf on Evidence, sec. 449; *People* v. *Tiley*, 84 Cal. 651; *People* v. *Bell*, 53 Cal. 119.)

There was no error in the rulings of the court excluding the proffered testimony.

The findings are sufficient to uphold the judgment. The other errors assigned are unimportant.

The judgment and order appealed from should be affirmed.

HAYNES, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

McFARLAND, J., DE HAVEN, J., FITZGERALD, J.

Hearing in Bank denied.