[L. A. No. 2164.    Department Two.—January 5, 1909.]

OLIMPIA DE GOTTARDI, Respondent, v. V. L. DONATI, Appellant.

ACCOUNTING BY AGENT—SALE OF LAND—FINDING AS TO OWNERSHIP.— In an action against an agent for an accounting of the proceeds of the sale of certain land alleged to have been the property of the plaintiff it is held, upon a review of the evidence, that the finding of the jury that the plaintiff was the owner of the land was sustained by the evidence.

ID.—VERDICT—CONFLICT OF EVIDENCE—APPEAL.—A verdict, in support of which some evidence was offered at the trial, will not be disturbed on appeal on the ground of the insufficiency of the evidence to sustain it.

ID.—IMMATERIAL FINDING—JUDGMENT.—An erroneous finding, which is not material to the judgment, cannot be made the basis of a reversal of the judgment.

APPEAL from a judgment of the Superior Court of San Luis Obispo County.    E. P. Unangst, Judge.

The facts are stated in the opinion of the court.

W. H. Spencer, and Wm. Shipsey, for Appellant.

S. V. Wright, and Louis Lamy, for Respondent.

MELVIN, J.—Olimpia De Gottardi brought suit against appellant for rent collected and for money received as the proceeds of the sale of land made, according to the allegations of the complaint, by appellant in violation of his duty as plaintiff's agent.    We consider only the first cause of action set forth in the complaint, as judgment was adverse to plaintiff on the second.    It is alleged in that complaint that from the twelfth day of December, 1900, to the eighth day of December, 1902, Olimpia De Gottardi owned in fee an undivided one-half interest in a certain lot situated in the town of Cayucos; that Donati, the appellant, about June 1, 1902, fraudulently represented to Mrs. De Gottardi, the respondent, who was his sister-in-law, that she was in danger of having her property taken from her by the trustee in bankruptcy of her husband's estate; that said Donati offered to manage her property with

out cost to her so that she would be able to save it; and that she consented to such agency, having full belief in the integrity of her brother-in-law. It is further set forth in the complaint that Mrs. De Gottardi's deed to the property had not been recorded and that appellant, knowing this fact, procured a conveyance to himself from one Pronzini, her grantor, of the same interest in the property which he knew she owned. Then follow allegations of the sale of this interest for thirteen hundred dollars and the collection of two hundred dollars in rents, judgment being demanded in the sum of fifteen hundred dollars. The jury by a general verdict found for the plaintiff $1132.75 actual damages, and also made a number of special findings in response to certain interrogatories. One of these special verdicts was as follows: "If said Pronzini delivered said deed to plaintiff, how was the consideration for the deed paid, whose money paid it, and when was it paid? Answer: Paid by draft. Mrs. De Gottardi's money. When deed was delivered." Counsel for the appellant question the sufficiency of the evidence to support this special verdict, while the contentions of respondent's counsel are: 1. That there was sufficient evidence to justify this finding, and, 2. It was at any rate an immaterial issue improperly submitted to the jury. Plaintiff testified: "I bought the property and I was waiting for the deed. For this deed I never myself paid Pronzini one cent. My husband bought the property for me. I had nothing whatever to do with the purchase of this property." She also said while on the witness stand: "I did not know for four years after I saw the deed in March, 1901, where it was, but during these four years I thought I owned a half interest in the property. . . . Q. Do you know anything about what money was sent to Pronzini to pay for this lot? A. I think they were mine or part of mine. I know that Pronzini was paid $250 for making this deed to me but the only way I know it is that my husband told me so." It also appeared from the testimony of plaintiff that at the time of her marriage she had two hundred dollars, which was given to her husband. Two or three years after the marriage the husband paid an antenuptial debt of one hundred and fifty dollars, which she owed to an uncle in Switzerland. During these years the husband and wife had been working for Mr. Muscio at Los Alamos on a large dairy farm and had been receiving half the profits.

It might well be the fact that the husband used a portion of his later earnings to pay the wife's debt contracted before she left Switzerland. Nothing to the contrary appears. It is also true that the testimony upon which was based the special finding that plaintiff's money paid for the interest derived from Pronzini is neither very striking nor particularly emphatic. However, there is some evidence upon that point. Plaintiff testified that she thought part of the money paid was hers, and her husband told her of the payment of two hundred and fifty dollars for the deed. Under our rule that a verdict based on some evidence will not be disturbed, this one will stand. We are also of the opinion that the special issue here considered was not material, and it, therefore, may be ignored. The complaint alleged her ownership in fee of the property, and the deed of her interest in which her name appeared as grantee was received in evidence. There was no allegation in the answer that she participated in any fraud to defeat the creditors of her husband. There was testimony to the effect that her husband had bought the property from Pronzini for her. This sufficiently established her ownership of the half interest, and according to her testimony defendant admitted that she was the owner thereof. There was ample evidence to justify the jury's conclusion that this was her separate property without regard to the use made by her husband of the two hundred dollars received by him from her at the time of the marriage. Even if we were to hold the special finding unsupported by the evidence, such conclusion would not indicate error upon which we would be justified in reversing the judgment, because an erroneous finding which is not material cannot be the basis of such reversal. (*Faulkner* v. *Rondoni,* 104 Cal. 140, [37 Pac. 883]; *White* v. *Douglass,* 71 Cal. 119, [11 Pac. 860].)

There was no error in the refusal to give certain proffered instructions. These all referred to the possible fraudulent intent of plaintiff's husband, but they did not respond to the pleadings nor the proof.

The judgment is affirmed.

Henshaw, J., and Lorigan, J., concurred.