[Civ. No. 5796. First Appellate District, Division Two.—June 2, 1927.]

## A. B. METCALF, Respondent, v. D. ROMANO et al., Appellants.

[1] NEGLIGENCE—ACTION FOR DEATH—CHILD WALKING ALONG HIGHWAY—AUTOMOBILES—EVIDENCE—SUPPORT OF JUDGMENT.—In this action for damages for the death of plaintiff's seven year old boy, who was struck by an automobile as he walked along the highway, the evidence was sufficient to support the judgment for plaintiff.

[2] EVIDENCE — WITNESSES — CHILDREN UNDER TEN YEARS OF AGE — COMPETENCY—DISCRETION.—The determination of the question of competency of children under ten years of age to testify is a matter for the trial court to determine in its discretion.

[3] NEGLIGENCE—INSTRUCTIONS—CARE—SECTION 113, MOTOR VEHICLE ACT.—In such action, an instruction as to an automobile driver's duty to exercise care in driving on a public highway, which followed the wording of section 113 of the Motor Vehicle Act of 1923, was properly given.

[4] ID.—AUTOMOBILE DRIVER—CARE—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS. — In such action, an instruction dealing with the amount of care required of defendant in driving his automobile, including the element whether or not deceased's conduct indicated that he was aware of the approach of the automobile, was not erroneous as omitting the question whether deceased suddenly ran out upon the pavement in front of the car, where said instruction did not purport to deal with contributory negligence.

[5] ID.—CONSIDERATION OF EVIDENCE—INSTRUCTIONS—DIRECTED VERDICT.—In such action, an instruction telling the jury what to consider in determining whether defendant used due care and drove his car at a reasonable speed did not amount to a direction that the jury find for plaintiff if certain facts were found from the evidence.

[6] ID.—ESSENTIAL ELEMENTS.—In such action, an instruction directing a verdict for plaintiff if certain facts were found was not erroneous where such facts, although very much condensed, included lack of due care on the part of defendant, proximate cause, and contributory negligence.

2. Discretion of court as to competency of children as witnesses, notes, 124 Am. St. Rep. 302; 14 Ann. Cas. 3; Ann. Cas. 1916C, 424; 19 L. R. A. 605, See, also, 27 Cal. Jur. 38, 39; 28 R. C. L. 465.

[7] ID.—HIGHWAYS—USE BY CHILDREN—AUTOMOBILE DRIVERS.—Children going to school have a right to travel the highways of the state, and parents are not required to accompany them nor to send them through fields where stock are frequently grazing in order to avert the possibility of injury from careless automobile drivers.

[8] ID.—RUNNING IN FRONT OF AUTOMOBILE—CARE.—It is not necessary before any care is required on the part of an automobile driver toward a child traveling along the highway that the child must first indicate its intent to immediately run upon the highway in front of the machine.

[9] ID.—DEATH OF CHILD—RECOVERY BY PARENT—DAMAGES—INSTRUCTIONS.—In this action by a parent for damages for the death of his seven year old boy, when struck by an automobile as he walked along the highway, instructions, which limited a recovery to the financial and pecuniary losses suffered by plaintiff and allowing the jury to consider, in fixing the amount of their verdict, that plaintiff was legally bound to provide for, maintain, clothe, and educate his child during minority, were properly given.

[10] NEW TRIAL—IMPEACHMENT OF VERDICT—AFFIDAVITS OF JURORS. On motion for a new trial the verdict cannot be impeached by affidavits of jurors.

[11] ID.—DELIBERATIONS OF JURY—EXPRESSIONS OF INDIVIDUAL JUROR. Language used by jurors, while deliberating, although not couched in the choicest English nor expressive of kindly sentiments toward careless drivers of automobiles cannot be made a reason for setting aside verdicts and granting new trials in personal injury cases.

---

(1) 42 C. J., p. 1233, n. 27.   (2) 40 Cyc., p. 2201, n. 59.   (3) 42 C. J., p. 1279, n. 66.   (4) 42 C. J., p. 1277, n. 32.   (5) 38 Cyc., p. 1653, n. 9.   (6) 38 Cyc., p. 1651, n. 83.   (7, 8) 29 C. J., p. 658, n. 50; 42 C. J., p. 1049, n. 79.   (9) 17 C. J., p. 1314, n. 75.   (10) 29 Cyc., p. 982, n. 3.   (11) 29 Cyc., p. 801, n. 99.

APPEAL from a judgment of the Superior Court of Fresno County.   J. E. Woolley, Judge.   Affirmed.

The facts are stated in the opinion of the court.

---

9.   Measure of damages to parent for death of minor child, notes, 12 Am. St. Rep. 381; Ann. Cas. 1912C, 58; Ann. Cas. 1916B, 532. See, also, 8 Cal. Jur. 1016–1018; 8 R. C. L. 835 et seq.

10.   Juror's affidavit or statement in support of application for new trial, note, 12 Am. Dec. 142. See, also, 20 Cal. Jur. 61; 27 R. C. L. 896.

Theodore M. Stuart and J. S. Garnett for Appellants.

G. L. Aynesworth, and L. N. Barber for Respondent.

BARTLETT, J., *pro tem.*—Plaintiff brought two separate
actions in the superior court of Fresno County, California,
for the sum of ten thousand dollars damages for the death
of Byron Metcalf, a seven year old son of plaintiff, alleged
to have resulted through the boy being struck by an auto-
mobile negligently operated by the defendants on the morn-
ing of December 4, 1923, while the child was traveling on
his way to school along a public highway of Fresno County,
California, commonly known as the Whites Bridge road. The
cases were consolidated for purposes of trial, and one ver-
dict returned and one judgment entered, verdict and judg-
ment being for the sum of $5,000. A motion for a new
trial was made and denied and the appeal is taken from
this order and from the judgment, on a typewritten manu-
script.

[1] The collision which caused the boy's death was at a
point on the Whites Bridge road about fifteen miles west of
the city of Fresno. At the place where the fatal injuries
were received, the road, which is a paved one, with dirt
shoulders, runs east and west upon a straight line. Plaintiff
resided on a small ranch on the north side of the road. On
the morning in question Byron Metcalf and two other boys
of about his age were on their way to school, traveling on
foot, no other person being with them. To reach the school-
house the route they were traveling led from plaintiff's ranch
to the Whites Bridge road, thence west along this road for
about a quarter of a mile and thence north along another
road a half mile to the schoolhouse. The three boys were
walking west along the north side of the dirt shoulder of
the road just before the collision occurred. Coming toward
the boys from the west was a large truck and trailer which
is referred to in the evidence as the "cotton truck." Coming
from behind them going west was an oil truck, and behind
that, also going west, came the defendants in their automo-
bile. At a point 75 or 100 yards east of the place of colli-
sion defendants drove their car around the oil truck and
pulled over to the north side of the pavement. The cotton

truck was then running along the south side of the pavement. The boys were seemingly watching the cotton truck and giving no attention to the oil truck and defendants' automobile. As he passed the boys the driver of the cotton truck waved his hand at them in an endeavor to call their attention to the other machines. Before passing the cotton truck the right wheels of defendants' machine were off of the north edge of the pavement, but all four wheels seem to have been on the pavement close to its edge when the boy was struck. The evidence is conflicting as to just what occurred at the moment of the collision on the part of either the boys or the defendants.

The fatal injury was a fracture at the base of the skull on the left side. The only bruises on the child were at a point above the left ear near the end of the fracture and on the left side of the right knee. The cotton truck was 38 feet long with its trailer and was being driven at a speed of about 13 miles an hour when it met defendants' machine. Its driver testified that when he passed the children they were in line about 3 feet off the pavement; that as he passed them he saw defendants' car approaching about 60 feet away at a speed which he estimated to be between 30 and 35 miles per hour, and that they passed him at the same rate of speed; that he waived to the children and pointed to the approaching car; that he did not see them move; that all of this time the right wheels of defendants' car were off the pavement; that none of the children looked in the direction of defendants' car, and that he did not hear defendant sound his horn. Defendants testified they were 250 or 300 yards from the boys when they first saw them; that they were then walking off the pavement along the shoulder of the road; that they passed the oil truck and then first saw the boys; that they were then going 30 or 32 miles an hour; that the oil truck when they passed it was going 15 or 20 miles an hour; that they blew their horn when they saw the children first, and again blew it twice when 75 or 100 feet away from them; that when about 6 feet away from them one of the children stepped into the highway; that the car could not be turned to the right as it would have killed all three children; that the only chance was to twist the car to the left; that this was done and the child saved from the front wheel, but that it was hit by the rear fender as the

machine passed; and that at the time of the impact the speed of their machine had been reduced to about 12 miles an hour.

The evidence of the driver of the oil truck is not at all clear or convincing as to the details of what came within his opportunities of observing and his evidence given at the coroner's inquest and on the trial are so conflicting and uncertain that no useful purpose would be subserved by attempting to digest and set it forth in this opinion. Taken altogether, there is sufficient evidence to justify the verdict rendered by the jury and the judgment entered, and the same should not be disturbed unless the alleged errors of law complained of by defendants warrant a reversal.

These errors are claimed to be: First, the permitting of a boy, Tony Soares, aged eight years, one of the companions of Byron Metcalf, to testify before the jury; second, the giving of certain of the court's instructions; third, the refusing to give some instructions requested by defendants; fourth, in the trial court not setting aside the verdict and granting a new trial on a claim that one of the trial jurors gave false answers on his *voir dire* examination, thereby concealing an alleged violent prejudice of the juror against the defendants.

The boy, Tony Soares, was permitted to testify after a careful preliminary examination conducted in the presence of the jury by the trial judge and participated in by the attorneys for both plaintiff and defendant. [2] The determination of the question of competency of children under ten years of age to testify is peculiarly a matter for the trial court to determine in its discretion and there is nothing in the evidence here that would justify an appellate court in declaring that there was an abuse of the sound discretion exercised by the trial court in admitting the evidence of this child.

Appellant urges that error was committed in giving the following instructions:

"You are instructed that it is the duty of a person operating an automobile upon a public highway to drive the same with due care and circumspection, and at a careful and prudent speed, not greater than is reasonable and proper, having due regard to the traffic, and he has no right to drive at such speed or in such manner as to endanger the life, limb or property of any person.

"You are instructed that in determining whether or not the defendant Romano used due care and circumspection and drove the car at a reasonable and prudent speed, it is your duty to take into consideration all the circumstances which would have influenced the conduct of an ordinarily prudent driver in the same situation, including the relative positions of the children and the truck and trailer; the amount of space which the automobile had in which to pass between them; the apparent age and physical capacity of the children and whether or not their conduct indicated that they were aware of the approach of the automobile.

"You are instructed that if you find that the driver of the automobile did not drive with due care and circumspection and at a speed which, under all the circumstances of the case, was reasonable, and that such unreasonable speed or want of due care and circumspection was a proximate cause of the death of plaintiff's child, it will be your duty to find for the plaintiff, unless there was some negligence on the part of the child, or of the plaintiff himself, which contributed to the injury."

[3] Concerning the first paragraph of said instructions, it is urged that it is subject to the same error as was pointed out in *Garrison* v. *Pearlstein,* 68 Cal. App., at p. 339 [229 Pac. 353]. While the instruction there was similar to the instruction here, the statute then was different and the instruction failed to follow the wording of the statute as it existed at that time, whereas, the instruction here under consideration so far as applicable followed the wording of the statute as it existed at the time of the accident involved, section 113 of the Motor Vehicle Act of 1923 (Stats. 1923, p. 553). In the *Garrison* v. *Pearlstein* opinion it is expressly stated, "If the instruction complained of had used the statutory language there would have been no possible objection."

[4] The next paragraph of the above-quoted instructions is criticised by appellant upon the grounds that it emphasizes certain particular circumstances without mentioning all of the material circumstances disclosed by the evidence. The only one specified as omitted is whether or not the plaintiffs' deceased child suddenly ran out upon the pavement in front of the defendant's car. The instruction included the element of whether or not the children's conduct indicated

that they were aware of the approach of the automobile. We think this was sufficient inasmuch as the instruction purports only to deal with the amount of care required of defendant in driving his automobile. The instruction does not purport to deal with contributory negligence, and the element said to be omitted from the instruction relates more properly to a consideration of contributory negligence than it does to a consideration of the negligence of defendant.

[5] Next it is also urged concerning the second paragraph of said quoted instructions that it should be held to be erroneous upon the same grounds that certain instructions were held to be erroneous in *Pierce* v. *United Gas & Electric Co.,* 161 Cal. 176 [118 Pac. 700]; *Keena* v. *United Railroads of San Francisco,* 57 Cal. App. 124 [207 Pac. 35]; *Beyerle* v. *Clift,* 59 Cal. App. 7 [209 Pac. 1015]. That is to say, appellant contends that the instruction amounts to a direction that the jury find for the plaintiff if certain facts are found from the evidence. The instruction is not open to this criticism for it does not purport to direct a verdict, it only purports to assist the jury in the determination of whether or not the defendant driver used due care. The most that could be said for this instruction is that it purports to say what would constitute negligence. [6] It is only in the third paragraph of the above-quoted instructions that a direction for a verdict is found and there, although the facts are very much condensed, we find all the material elements are incorporated; first, lack of due care on the part of defendant; second, proximate cause; and, third, contributory negligence.

[7, 8] No error was committed by the trial court in the refusal of the instructions requested by the plaintiff that were not given. Children going to school have a right to travel the highways of the state and it is not necessary before any care on the part of an auto driver is required toward a child that it must first indicate an intent to immediately run upon the highway in front of the machine as was requested by the first instruction refused. Neither is it required of parents that they accompany their children traveling a public road on their way to school nor that they send the children through fields where stock are frequently grazing in order to avert the possibility of injury from the careless driver of an auto on a public road.

[9]  The jury was correctly instructed as to the subjects which they could consider in determining the amount of damage occasioned by the death.  The instructions given limited a recovery to the financial and pecuniary losses suffered by plaintiff.  The court also instructed them that they must take into consideration, in fixing the amount of their verdict, that the plaintiff was legally bound to provide for, maintain, clothe, and educate his child during minority. There is no showing that the verdict is excessive or that its rendition was influenced through passion or prejudice on the part of the jurors.

[10]  The action of the trial court in refusing to grant a new trial on account of the alleged prejudice of one of the trial jurors must be upheld.  It does not appear from the transcript or briefs how many of defendants' peremptory challenges were used, the record saying one or more was exercised.  Whether or not the jury was polled on the rendering of the verdict does not appear.  The motion was heard on the affidavits of two of the jurors and the attorney for defendants.  If verdicts could be set aside because of the expressions of individual jurors during their deliberations prior to arriving at a verdict a procedure novel in the administration of justice would be introduced, for by a long line of decisions of the appellate courts of this and of many other states it is held that verdicts cannot be impeached by the affidavits of jurors.  The affidavits of the two jurors as to the remarks made during the deliberations of the jury and the testimony given by the juror on his *voir dire* do not disclose any biased and prejudiced mind against the defendants or their case when he was examined.  [11]  Regardless of how the juror may have been affected by and regarded the evidence in this case, after it was introduced, it is possible that the evidence in some of the automobile accident cases which have become so frequent all over the state, may sometimes have a tendency when heard by jurors to bring about the use of language while deliberating not couched in the choicest English, nor expressive of kindly sentiment toward careless drivers.  But such expressions cannot be made a reason for the setting aside of a verdict and granting of a new trial.  Methods are provided by law

under which jurors, should they violate their oath on their *voir dire,* or as jurors, can be punished.

The judgment and order are affirmed.

Koford, P. J., and Sturtevant, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 1, 1927.