[Civ. No. 6506. First Appellate District, Division One.—January 9, 1929.]

In the Matter of the Estate of PASQUALE MALVASI, Deceased. JOHN SPINGOLA, Appellant, v. FILO- MENA DONA, Respondent.

J. J. Dunne, Richard V. Bressani and M. H. Farrar for Appellant.

O. H. Speciale and Owen D. Richardson for Respondent.

SPENCE, J., *pro tem.*—This is an appeal from a judgment confirming the probate of a will upon a contest instituted after probate. The will was executed by the testator on March 20, 1925, and left all of his property to the proponent, Filomena Dona, a sister. The deceased was unmarried and left surviving as his heirs a brother, three sisters, and the daughter and sons of a deceased sister. A previous contest before probate, tried before the court without a jury, had been unsuccessful. The present contest was instituted by the appellant, John Spingola, a nephew, and involved the issues of due execution of the will, undue influence and unsoundness of mind.

On the trial the court granted a nonsuit as to all grounds of contest except that of unsoundness of mind, and upon this issue the verdict of the jury was against the contestant.

On this appeal there are several specifications of error which will be discussed in the order in which they are presented by appellant.

It is first urged that the evidence was insufficient to justify the finding by the jury that the deceased was of sound mind. A review of the transcript leads to the conclusion that there was abundant evidence of the soundness of mind of the testator. The most that may be said is that the evidence produced by the appellant created a conflict and was sufficient to justify the action of the trial court in submitting this issue to the jury. The jury determined upon conflicting evidence that the deceased was of sound mind and competent at the time of the execution of the will, and it is well settled that such determination is conclusive on appeal. (*Estate of Clark,* 170 Cal. 418 [149 Pac. 828]; *Estate of Nelson,* 132 Cal. 182 [64 Pac. 294].)

Without reviewing all of the testimony on this subject, it may be pointed out that the proponent produced the day nurse and the night nurse who were attending the deceased, one of whom was a subscribing witness to the will, the priest

who attended the deceased shortly before the making of the will, and the attorney who drew the will, and was also subscribing witness. All these were of the opinion that the deceased was of sound mind and gave ample reasons to justify their opinions. It is true, as pointed out by appellant, that the will was drawn on the morning of the day upon which the deceased passed away at 5:40 P. M., as a result of lobar pneumonia. He was sixty-three years of age, had been confined to his bed for ten days and was a very sick man. The substance of the testimony of both nurses was that the deceased spoke rationally, answered questions in a lucid manner and was not delirious and did not talk incoherently. The priest testified that ''he talked rationally, his mind was not wandering; he did not rave; he was a very sick man, but I could understand him and he could uderstand me and he did not rave;—Pasquale Malvasi on this occasion made to me an actual confession; he told me his state of sins by answering the questions that I asked of him and he received the Sacrament;—if I had been of the opinion that the sick man was not of sound mind, I would not have given confession and communion. I would not have given him absolution if he had not given his confession and if I were of the opinion he was of unsound mind.'' Mr. Speciale, the attorney who was called to draw the will, testified that the deceased told him that he wanted to make a will. Upon inquiry, the deceased gave him a list of his relatives and then said, ''I want to give everything to my sister Filomena Dona.'' The attorney asked him whether he desired the other relatives to receive anything, mentioning the names as given him by the deceased, and the deceased said ''No, nothing to the other relatives, everything to my sister Filomena Dona.'' He requested that the sister be named as executrix and advised the attorney that his property consisted of the house where he was, some cash and some Bank of Italy stock. After the execution of the will he asked the attorney to take the will to his office and hold it for him.

Only a brief review of some of the testimony is here set forth, but such testimony was ample to sustain the finding of competency and soundness of mind. Counsel for appellant points to some similar features in the testimony in this case and that in *Estate of Doolittle*, 153 Cal. 29 [94 Pac.

240]. There are points of similarity, but there are also many phases in which the testimony in the two cases differs. There the trial court decided on conflicting testimony that the deceased was of unsound mind. Here the jury decided upon conflicting testimony that the deceased was of sound mind. In either event, under the authority of that case, the determination made on conflicting evidence in the trial court cannot be disturbed on appeal.

■ Appellant next urges that the trial court erred in granting a nonsuit on the issue of due execution of the will. The evidence offered by proponent showed that the will had been duly executed in all particulars. It is contended, however, that the testimony of Mrs. Mary De Marco raised a conflict on the issue of due execution which should have been submitted to the jury. This witness and the other relatives were asked to leave the room when the attorney arrived. They did so and remained in the kitchen for about an hour during the time that the attorney conversed with deceased and while the will was drawn and executed. There was an open doorway but no door between the dining-room and the bedroom in which the will was executed. There was a door between the dining-room and kitchen, which was closed most of the time. At some time while the attorney was in the bedroom with the deceased the nurse went to the kitchen and returned to the bedroom, leaving the door open between the kitchen and dining-room. The witness, Mrs. De Marco, testified to seeing and hearing certain things after the door was left open. The witness then testified, ''After Speciale had said '*ferma qui*' and the nurse had asked the sick man to 'sign here' and Speciale took the paper away, I did not hear anything else said in that room; I was where I could hear and I heard nothing more said.'' The testimony of this witness could only tend to prove what happened in the bedroom after the door was opened and during the time she was looking and listening through the dining-room from her position in the kitchen. It would not tend to prove that there were no acts or statements on the part of the deceased, the attorney and the nurse connected with the executing of the will, other than those to which this witness testified, and such testimony was not sufficient to raise a conflict on the issue of due execution. The motion for nonsuit was, therefore, properly granted as to this issue.

Appellant next takes exception to the charge to the jury. It is contended that the trial court erred in giving, refusing and modifying various instructions. Certain proposed instructions were modified by eliminating therefrom all reference to the issues of due execution of the will and undue influence, as to which issues a motion for nonsuit had been granted. As the motion for nonsuit was properly granted, the modification of the instructions so as to eliminate these issues from the consideration of the jury was also proper. It may be noted that it is not urged that there was error in granting the motion for nonsuit on the ground of undue influence. The remaining errors claimed in connection with the charge to the jury involved instructions relating to testamentary capacity. This was the only issue submitted to the jury and the charge dealt in length with this subject. From a reading of the entire charge we conclude that the jury was fully and fairly instructed upon this issue, and that there was no prejudicial error in the giving, refusing or modification of any of the several instructions referred to by appellant.

It is next claimed that the trial court erred in refusing to grant a new trial. Counsel seems to complain of the fact that the motion for new trial was not given the consideration to which counsel believes the motion was entitled, but was decided without argument at the time the motion was made. There can be no merit in counsel's position in this regard, for the record shows that two motions were presented at the same time, the motion for new trial and a motion for an order to secure the services of some other judge to determine the motion for new trial, and that at the time of making these motions, counsel for appellant stated that he did not desire to argue either of said motions. Counsel further contends that the court erred in refusing to grant a new trial, on the ground of alleged misconduct of Mrs. Mary G. Post, a juror, in failing to disclose that she was a Christian Scientist on *voir dire*. Mrs. Post was examined and accepted as a juror by counsel on both sides. She was asked many of the usual questions propounded to prospective jurors and answered them to the apparent satisfaction of all. No questions were asked concerning her religious belief nor concerning her views upon disease or its relation to mental capacity. She was asked, "And in the event that

you should find that the testator was of unsound mind at the time that he executed the will, you would not hesitate to render a verdict against the document purporting to be his will, and to set it aside?" To this question she replied, "No." Mrs. Post joined in the verdict upholding the will. After the conclusion of the trial counsel for appellant learned that Mrs. Post was a Christian Scientist. On the motion for new trial affidavits were filed alleging that Mrs. Post was a Christian Scientist and believer in the doctrines of Christian Science. The affidavits contain numerous passages from "Science and Health," by Mary Baker Eddy. Briefly, counsel takes the position that the followers of this faith deny the reality of disease and are, therefore, not qualified to act as jurors in a case in which it is claimed that incapacity or unsoundness of mind is the result of disease; that the juror should have volunteered the information that she was a Christian Scientist on *voir dire* and that her failure to disclose her alleged disqualification resulted in depriving appellant of a fair and impartial jury. Counsel states in his affidavits, ". . . and this affiant respectfully insists that it is not to be doubted that said Mary G. Post would have been challenged peremptorily as a juror by said contestant if the fact had been disclosed that she was a believer in the doctrines of the aforesaid Christian Science." In a counter-affidavit of Mrs. Post she stated that for some years she had been a believer in the doctrines of Christian Science. Among other things, her affidavit stated, "I further depose that the fundamental doctrine or idea of Christian Science regarding sickness or disease is that sickness or disease can be healed thereby and that Christian Science at all times in the past has recognized and does now recognize the existence of disease, including mental incompetency."

■ Ordinarily the religious belief of a prospective juror is immaterial and no duty is imposed upon a prospective juror to volunteer information on that subject. Article I, section 4, of the constitution of California provides: ". . . and no person shall be rendered incompetent to be a witness or juror on account of his opinions on matters of religious belief." It is not to be doubted that the state of mind of a prospective juror resulting from religious belief, or any other cause, might disqualify such person from

acting as a juror in a particular case regardless of the question of general competency to act as a juror. (*People* v. *Rollins,* 179 Cal. 793 [179 Pac. 209]; *People* v. *Galloway,* 202 Cal. 81 [259 Pac. 332].) But in such cases it is the state of mind which is material and which disqualifies and such state of mind is material only in the event that it entitles a party to a challenge for cause. ▮ In the present case appellant does not claim that by reason of the state of mind of Mrs. Post he would have been entitled to challenge for cause under any of the provisions of section 602 of the Code of Civil Procedure. It is only claimed that the juror should have volunteered the information concerning her religious belief in order that appellant might have exercised a peremptory challenge. This position is untenable. In any event, it is to be noted that appellant's contention respecting alleged disqualification of the juror was based solely upon the theory that the state of mind of the juror, as a result of her religious belief, was such that the juror did not recognize the existence of disease or mental incompetency. The actual state of mind of the juror was not set forth, except in so far as that state of mind might be implied from her affiliation with the Christian Science church. The juror's affidavit shows that according to her conception of its doctrines "Christian Science at all times in the past has recognized and does now recognize the existence of disease, including mental incompetency." It is, therefore, apparent that there was no showing that the juror did not recognize the existence of disease or mental incompetency. We conclude that the juror was not disqualified, and was not chargeable with any misconduct for failure to volunteer information concerning her religious belief, and that appellant was not deprived of a fair and impartial jury.

There is a further appeal by contestant from the order denying the motion of contestant for an order to secure the services of some other judge to preside at the hearing and determination of the motion for new trial. This motion was in its nature a motion to disqualify Judge P. F. Gosbey under the provisions of section 170 of the Code of Civil Procedure on the grounds of alleged bias and prejudice. The motion was presented upon affidavits and counter-affidavits and was heard and determined by Judge Gosbey.

Counsel first contends that at the time of the hearing of that motion, a judge could not pass upon his own disqualification. Reference is made to chapter 744. of the Statutes of 1927, page 1403. This act amended section 170 of the Code of Civil Procedure and the amendment provided that "No judge of a court of record who shall deny his disqualification, shall hear or pass upon the question of his own disqualification . . ." The bill was approved by the Governor May 24, 1927. The legislature had adjourned on April 29, 1927. The motion in the present case was heard and determined on May 27, 1927, three days after the approval of the bill by the Governor.

The power of a judge to pass upon his own disqualification prior to the time that the 1927 amendment took effect is not questioned. It is claimed, however, that under the provisions of section 325 of the Political Code the amendment was in effect at the time of the hearing of the motion on May 27, 1927. ■ It is unnecessary to pass upon the proper construction of section 325, for the sections of the Political Code relating to the time when a statute takes effect, were superseded by the amendment in 1911 of article IV, section 1, of the constitution, at least in so far as such sections are in conflict therewith. That article provides, "No act passed by the legislature shall go into effect until ninety days after the final adjournment of the legislature which passed such act . . . ," with certain exceptions which are of no concern here. ■ By virtue of the foregoing constitutional provisions, the amendment to section 170 as passed by the legislature in 1927 did not take effect until July 29, 1927, and at the time of the hearing of the motion in this case, on May 27, 1927, a judge had the power to pass on the question of his own disqualification.

■ With respect to the motion to disqualify, it is further urged that said motion should have been granted on the ground of bias and prejudice. The affidavits and counter-affidavits used in connection with this motion are substantially in accord except that the general allegations of bias and prejudice were denied in the affidavit of Judge Gosbey. These affidavits and counter-affidavits showed that Judge Gosbey had heard a prior contest of the same will, sitting without a jury, and that his decision had been against the contestants in that proceeding; that in the present con-

test, after the jury had retired, the judge had an informal discussion with counsel in the courtroom; that in this discussion the judge commented upon the course pursued in the drawing of the will by Mr. Speciale, one of the attorneys and a witness for proponent, and commended Mr. Speciale, on the manner in which he had handled the situation at the time he was called in to draw the will; that after the verdict was rendered and the jury discharged, one of the jurors asked the judge what he thought about the verdict, and he replied that he did not see how the juror could have done differently. The conclusion to be drawn from these affidavits is that prior to the hearing of the motion for new trial, the trial judge was convinced that the will had been properly executed and believed that the verdict of the jury sustaining the will was correct.

It is the duty and the practice of trial judges to closely follow the evidence that is presented before a jury. It is but natural and entirely proper that at the conclusion of the trial, the judge should form an opinion with respect to the weight and sufficiency of the evidence and the merits of the controversy. If the holding of such opinion should constitute grounds for disqualification, the judge who tried the cause would be disqualified on the motion for new trial in practically all cases. Although it is no doubt better practice for the trial judge to refrain from expressing any opinion prior to the hearing of the motion for new trial, such expression is merely evidence of the fact that the judge entertains such opinion and is not evidence of bias or prejudice. Taken singly or collectively, we conclude that neither the fact that the judge decided a former contest without a jury, nor the fact that he expressed his opinion to counsel or the juror as set forth, shows bias or prejudice disqualifying him from passing upon the motion for new trial.

For the foregoing reasons, the judgment and the order denying the motion to disqualify are affirmed.

Tyler, P. J., and Knight, J., concurred.