[Civ. No. 7672. First Appellate District, Division One.—May 25, 1931.]

FLORENCE J. DAVILLA, Respondent, v. LIBERTY LIFE INSURANCE COMPANY (a Corporation), Appellant.

310

Lester M. Gray and Charles R. Nelson for Appellant.

Henry Brown and Margaret E. Faires for Respondent.

GRAY, J., *pro tem.*—The beneficiary, named in a policy of accident insurance, received a verdict holding the insurer liable in the amount of the policy for her husband's death. From the judgment entered thereon, the latter appeals, urging as reasons for reversal: that a juror's prejudice denied it a fair and impartial trial; that the evidence establishes that the cause of death was a risk not covered by the policy, and excepted therefrom; and that the jury was erroneously instructed.

■ Before considering these matters, attention will be directed to respondent's motion to dismiss this appeal upon the ground that the notice to the clerk required by section 953a of the Code of Civil Procedure was filed thirty-six days after actual notice of entry of judgment. The clerk's transcript shows that, without receipt of written notice of such entry, but nine days after such entry, appellant served and filed its notice of intention to move for a new trial, that twenty-seven days thereafter such notice of intention was quashed and dismissed because of its failure to state "whether the same will be made upon affidavits or the minutes of the court or both" (Code Civ. Proc., sec. 659) and that, three days after such dismissal, appellant filed the notice required by section 953a. From these facts, respondent argues that the notice of intention was a nullity, without power to extend the time of filing notice to the clerk, that appellant had actual notice of entry at time of filing such notice of intention and that, therefore, the ten days allowed by section 953a, for filing notice with the clerk, commenced to run from date of such actual notice. This argument overlooks the fact that the notice of entry, which, under section 953a, starts the ten-day period running, is, by section 953d, of the same code required to be in writing, unless waived in writing or by oral stipulation made in open court and entered in the minutes. No written notice having been given or waived, the ten-day period for filing notice with the clerk, had not commenced when it was filed and so its filing was in time. (*Attkisson* v. *Reynolds,* 94 Cal. App. 185 [270 Pac. 686]; *Griffin* v. *Kent,* 206 Cal. 263 [274 Pac. 56]; *Sterling Corp.* v. *Superior Court,* 207 Cal. 370 [278 Pac. 859]; *Ritter* v. *Ritter,* 208 Cal. 27 [280 Pac. 112].) The motion, therefore, is denied.

■ To substantiate its claim of a juror's prejudice, appellant relies upon the affidavits of the jury's foreman and its attorney, filed in support of its motion for a new trial. Since the only order relative to that motion was its dismissal, the trial court did not pass upon the question of prejudice and therefore there is no order, relative thereto, to be here reviewed. (Code Civ. Proc., sec. 956.) ■ Assuming that the question is properly presented, the statutory prohibition against a juror's impeachment of the verdict, prevents consideration of either the foreman's affidavit (*Metcalf* v.

*Romano,* 83 Cal. App. 508 [257 Pac. 114]) or the attorney's affidavit (*Kimic* v. *San Jose-Los Gatos etc. Ry. Co.,* 156 Cal. 379 [104 Pac. 986]). █ A comparison of the affidavits with the juror's examination on *voir dire* does not disclose that she answered untruthfully or concealed any prejudice. (*People* v. *Galloway,* 202 Cal. 81 [259 Pac. 332].) Adopting appellant's unwarranted conclusion that the affidavits show prejudice, yet it was as to matters as to which she could have been but was not interrogated. The juror was not required to volunteer information. (*Estate of Malvasi,* 96 Cal. App. 204 [273 Pac. 1097].) Failure of counsel to more fully interrogate waived any disqualification that might have thus developed. (46 C. J. 90, 95; 20 Cal. Jur. 54.)

█ Appellant denies liability because of the insured's alleged misrepresentation of his occupation as police patrolman in his application, which, by the terms of the policy, was incorporated therein. The evidence as to the title of his occupation, at the date of the application, is conflicting. The general manager of the civil service department, a police clerk and the chief deputy comptroller, all of the city of Los Angeles, each testified that, at that time, the insured received the pay of a motorcycle officer. A former captain of detectives testified that the insured then worked as a detective. Respondent, his surviving wife, testified that his occupation then was a patrolman. There is no evidence as to whether these different titles designated different positions and, if so, whether such positions differed as to duties. The burden of proof as to these matters rested upon appellant. (*Ogilvie* v. *Aetna Life Ins. Co.,* 189 Cal. 406 [26 A. L. R. 116, 209 Pac. 26]; *Everett* v. *Standard Acc. Ins. Co.,* 45 Cal. App. 332 [187 Pac. 996].) Conceding these titles designated different positions, the conflicting testimony presented an issue of fact as to what then was the insured's occupation, which an instruction properly left to the jury's determination.

The policy insured against "the effects resulting exclusively . . . from bodily injury sustained by the Insured . . . (1) solely through . . . *accidental means* . . . (2) or in consequence of *being struck*". It excepted (1) "the result of the *intentional act* of the Insured . . . ; (2) any loss contributed to or caused by . . . *exposure to unneces-*

*sary danger;* (3) *while violating the law; . . . "*. Immaterial matter has been eliminated and numerals and italics inserted to clearly focus attention upon the several legal points raised by appellant. The facts of the accident, resulting in the insured's death the same day, as told by eyewitnesses (one, the operator of an automobile, which the insured struck; and the other two, operators of automobiles driven upon the same street as insured, but in opposite directions to each other) are simple and, in the main, unconflicting. The insured was operating a motorcycle easterly in the center of the street, one hundred feet wide, at a speed estimated by one of the latter witnesses at between thirty and thirty-five miles per hour and, by the other at fifty miles per hour, with his head close to the handle-bars, when he was confronted about two hundred feet ahead by an automobile headed south suddenly stopped in the intersection with its front about the center line of the street. The insured sounded no warning, applied his brakes when eighty to· one hundred feet distant from the automobile, and swerved first to the front and then toward the rear of such automobile. When ten or fifteen feet away from the automobile, the motorcycle skidded from under the insured, throwing him to the pavement, along which he slid till his head hit the right rear wheel of the automobile.

Arguing that the speed, application of brakes and the swerving of the motorcycle were each voluntary and intentional acts of the insured and that the presence of the automobile was to be expected, appellant claims that the death did not result from injuries sustained by "accidental means", but because of the insured's "intentional acts".

The burden of proving that death resulted from the two specified causes, i. e., the risk covered, rested upon respondent. (*Price* v. *Occidental Life Ins. Co.,* 169 Cal. 800 [147 Pac. 1175].) The term "accidental means" has been frequently defined in this state, but it seems not applied to similar facts. "The policy, it will be observed, does not insure against accidental death or injuries, but against injuries effected by accidental means. A differentiation is made, therefore, between the result to the insured and the means which is the operative cause in producing this result. It is not enough that death or injury should be unexpected or unforeseen, but there must be some element of unex-

pectedness in the preceding act or occurrence which leads to the injury or death." (*Rock* v. *Travelers' Ins. Co.*, 172 Cal. 462, 465 [L. R. A. 1916E, 1196, 156 Pac. 1029].) "Where the death is the result of some act, but was not designed and not anticipated by the deceased, though it be in consequence of some act voluntarily done by him, it is accidental death. Where death is caused by some act of the deceased not designed by him, or not intentionally done by him, it is death by accidental means. In other words, accidental death is an unintended and undesigned result, arising from acts done; death by accidental means is where the result arises from acts unintentionally done." (*Pledger* v. *Business Men's Acc. Assn. of Texas*, (Tex. Civ. App.) 197 S. W. 889, quoted with approval in *Olinsky* v. *Railway Mail Assn.*, 182 Cal. 669, 672 [14 A. L. R. 784, 189 Pac. 835], followed in *Ogilvie* v. *Aetna Life Ins. Co.*, *supra.*) "An effect which is the natural and probable consequence of an act or course of action cannot be said to be produced by accidental means." (*Harloe* v. *California State Life Ins. Co.*, 206 Cal. 141, 142 [273 Pac. 560].) "Without doubt, there can be no recovery if the insured does a voluntary act the natural, usual, and to-be-expected result of which is to bring injury upon himself. An injury or death so occurring is not produced by 'accidental means' in any sense of the word, legal or colloquial. (*Lickleider* v. *Iowa State Traveling Men's Assn.*, 184 Iowa, 423 [3 A. L. R. 1295, 166 N. W. 363, 168 N. W. 884].) . . . In *Western Com. Travelers' Assn.* v. *Smith*, 84 Fed. 401 [40 L. R. A. 653, 29 C. C. A. 223], a leading case, it is said the term 'accidental means' is descriptive of 'means which produce effects which are not their usual and probable consequences'." (*Horton* v. *Travelers Ins. Co.*, 45 Cal. App. 462, 466 [187 Pac. 1070].) "The term 'accidental means' depends for its application upon the facts of each particular case; since what would be an unusual or improbable consequence, an unexpected or unforeseen occurrence in one set of circumstances in which the assured might be placed would be the usual, the expected and in all human probability the foreseen consequence affecting the assured in another set of circumstances." (*Moore* v. *Fidelity & Casualty Co.*, 203 Cal. 465, 473 [56 A. L. R. 860, 265 Pac. 207, 210].)

In holding that a death caused solely by the insured's, slipping and falling while cranking an automobile resulted from accidental means, the court in *Preferred Accident Ins. Co.* v. *Patterson*, 213 Fed. 595, 597, used the following pertinent language: "We agree that, when a man is injured while doing merely what he intends to do, he is not injured by an accident, unless the course of his action has been interrupted or deflected by some unforeseen or unintended happening. To illustrate from the facts before us: Since the deceased was attempting to start the engine of his car by turning the crank, whatever injury he might sustain from the ordinary strain of that operation would properly be regarded as a result of what he intended to do, and therefore would not be accounted accidental. But we can hardly suppose that he intended to slip and fall in the course of the operation, and therefore if he did slip and fall, and sustained injury as the direct result thereof, the happening would be unforeseen and unintended, and the injury would be accidental." In considering facts, very similar to those in the instant case, the court in *Rowe* v. *United Commercial Travelers*, 186 Iowa, 454 [4 A. L. R. 1235, 1240, 172 N. W. 454], said: "But passing, for the present, the question of an alleged violation of the law and voluntary exposure to danger, it is yet true that driving the car at high or unsafe rate of speed, or in a manner to justly convict the insured of negligence, does not necessarily deprive the disaster which he suffered of its character as an accident, nor does it conclusively negative a finding that his injury and death were occasioned by accidental means. *Bohaker* v. *Travelers' Ins. Co.*, 215 Mass. 32 [46 L. R. A. (N. S.) 543, 102 N. E. 342]; *Lickleider* v. *Iowa St. T. M. Assn.*, 184 Iowa, 423 [3 A. L. R. 1295, 166 N. W. 363, 367, 168 N. W. 884]; *Hanley* v. *Fidelity & Cas. Co.*, 180 Iowa, 805 [161 N. W. 114]. If the injury to an insured person results, in some greater or less degree, from his own acts, and the evidence be such that the jury may fairly find that such result is one which he did not and could not reasonably have anticipated, and did not intend to produce, it is an accident, and is caused by accidental means. *Jenkins* v. *Hawkeye C. M. Assn.*, 147 Iowa, 113, 117 [30 L. R. A. (N. S.) 1181, 24 N. W. 199]; *Western C. T. Assn.* v. *Smith*, 29 C. C. A. 223 [40 L. R. A. 653, 85 Fed. 401]."

■ So in the instant case, it cannot be said as a matter of law that the insured intended, by swerving and applying his brakes, to skid his motorcycle and to be thrown therefrom, nor that he should have foreseen or anticipated the results of his voluntary attempts to avoid the peril. The court, under appropriate instructions, properly left the matter for the jury's decision.

■ Appellant next claims that since the evidence without contradiction shows that the insured's head hit the right rear wheel of the stationary automobile, it conclusively establishes that the death was not "in consequence of being struck" by an automobile. The wording of the policy does not warrant appellant's transposition of the word "automobile" from the next succeeding clause descriptive of another contingency, to this anterior clause. The policy merely requires that the insured be struck without specifying what shall strike. Its argument is based upon the assumption that the verb "strike" requires that both its subject and its object be in motion and that therefore the insured could not have been struck by a stationary automobile. The same argument is the basis of its criticism of the court's addition of the italicized phrase to its following requested instruction: "You are instructed that the verb 'struck' comes from the verb 'strike' which means to give a blow to; to smite; to dash; to stamp with a stroke or blow; *to come in collision with.*" The added phrase is one of the definitions of the verb "strike" given by Webster's Standard Dictionary. "Collision means a striking together; violent contact; the act of colliding, Standard Dictionary. In simple terms it is a striking together of two objects. Both may or may not be moving. One may be stationary." (*Polstein* v. *Pacific Fire Ins. Co.,* 122 Misc. Rep. 194 [203 N. Y. Supp. 362].) The word "collision" has been more commonly used, first in marine insurance and more recently in automobile accident insurance, to cover the same contingency as is described in the present policy by the phrase "being struck". The great weight of authority in cases involving the latter policies is to the effect that there can be a collision between a moving and a stationary object. (*Universal Service Co.* v. *American Ins. Co.,* 213 Mich. 523 [14 A. L. R. 183, 181 N. W. 1007]; *Harris* v. *American Casualty Co.,* 83 N. J. L. 641 [Ann. Cas. 1914B, 846, 43

L. R. A. (N. S.) 70, 85 Atl. 194]; *Southern Casualty Co.* v. *Johnson*, 24 Ariz. 221 [207 Pac. 987]; *Aetna Casualty & Surety Co.* v. *Cartmel*, 87 Fla. 495 [35 A. L. R. 1013, 100 South. 802]; *T. C. Power Motor Car Co.* v. *United States Fire Ins. Co.*, 69 Mont 563 [35 A. L. R. 1028, 233 Pac. 112]; *St. Paul Fire & Marine Ins. Co.* v. *American Compounding Co.*, 211 Ala. 593 [35 A. L. R. 1018, 100 South. 904].) Therefore we find no error as to these matters.

In considering appellant's· claim that the evidence establishes, as a matter of law, that insured's death was "contributed to or caused by voluntary exposure to unnecessary danger" and occurred "while violating the law", it must be remembered that these perils were excepted risks as to which appellant had the burden of proof. (*Mattson* v. *Maryland Casualty Co.*, 100 Cal. App. 96 [279 Pac. 1045].) "Where defendant relies on the fact that insured came to his death through some means which are excepted from the risk, such defense should be specially pleaded," (1 C. J. 493). The answer does not contain such special defenses, and so it may well be doubted whether any issue was tendered relative thereto..

Violation of any provision of California Vehicle Act (Stats. 1923, p. 517 as amended by Stats, 1925, p. 398, in effect at the time of the accident) " 'is presumptively an act of negligence and conclusively so until rebutted by evidence that it was justifiable or excusable under the circumstances' ". (*Berkovitz* v. *American River Gravel Co.*, 191 Cal. 195, 199 [215 Pac. 675, 677].) All witnesses agree that, when two hundred feet distant from point of collision, the insured was driving in the center of street in violation of section 122 of the act. While crossing the intersection immediately before the impact, he may not have been violating this section. Since there was no evidence that the intersection was obstructed, the limit of speed was thirty-five miles per hour (sec. 113). One witness testified that the insured's speed, when two hundred feet distant from point of impact, was fifty miles per hour and another fixed it at between thirty and thirty-five miles per hour, but no witness estimated such speed after his brakes were applied. Whether either violation was a proximate cause of the accident was a question of fact to be decided by the jury. (*Dougherty* v. *Ellingson*, 97 Cal. App. 87 [275 Pac. 456].)

But voluntary exposure to unnecessary danger is more than negligence. (*DeGreayer* v. *Fidelity etc. Co.*, 6 Cal. Unrep. 335, 340 [58 Pac. 390].) "The act done may be voluntary, but it cannot imply a voluntary exposure to the danger that turns out to be the real efficient cause of the death or injury, unless the danger is known and realized." (*Horton* v. *Travelers Ins. Co.*, *supra*, at p. 473.) Whether the insured knew and appreciated, or as an ordinarily reasonable man should have known and appreciated, the danger was a question that the court, under appropriate instructions, properly left to the jury. (*Rowe* v. *United Commercial Travelers*, *supra*.) "It is a question of fact for the jury to decide whether the injury resulted from some cause excepted in the policy, such as voluntary exposure to unnecessary danger." (1 C. J. 510.)

Since section 153 of the act makes any violation of its provisions a misdemeanor, any such violation by deceased which proximately contributed to his death would be within the exception, but whether he did so violate the statute or whether such violation was a proximate cause of his death were questions of fact for the jury. (*Rowe* v. *United Commercial Travelers*, *supra*; 1 C. J. 511.) ▮ The court properly refused appellant's requested instruction to the effect that, if the insured was riding at a speed of fifty to sixty miles, he was violating the law and defendant was not liable, because it ignored the essential element of proximate cause. "The proposed instruction was properly refused for the reason that it is indefinite as to place or location at which it might be inferred that the" motorcycle "was being operated". (*Dawson* v. *San Diego Elec. Ry. Co.*, 82 Cal. App. 141, 149 [255 Pac. 215, 218].) ▮ Appellant argues further that even if the instruction was properly refused, yet the court, on its own motion, should have instructed on the effect of this exception and, since there was no instruction given as to this matter, the judgment must be reversed. As above pointed out, the exception was a matter of affirmative defense which appellant should have but did not plead. Since the pleadings did not raise any issue as to the insured's death "while violating the law", the court properly failed to instruct upon this issue. (*Gulf of California Nav. Co.* v. *Investment Co.*, 70 Cal. 586 [12 Pac. 473]; *Marriner* v. *Dennison*, 78 Cal.

202 [20 Pac. 386]; *Peters* v. *McKay & Co.*, 136 Cal. 73 [68 Pac. 478]; *DeGottardi* v. *Donati*, 155 Cal. 109 [99 Pac. 492]; *McKeon* v. *Lissner*, 193 Cal. 297 [223 Pac. 965]; *California Credit etc. Corp.* v. *Brandlin*, 75 Cal. App. 609 [243 Pac. 41].)

Finding no error in the record, the judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.